# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
May 16, 2023
OFFICE OF THE CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Accounts mqpeisbiavavabcbiwsvh193@gmail.com )
and forebkgshoewtvk654@gmail.com )
possessed by Google, Inc. )

Case No.   5:23cm19-CDC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Western____ District of ____Arkansas____ *(identify the person or describe property to be searched and give its location)*: See "Attachment A"
This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711 (3)(A) and Federal Rule of Criminal Procedure 41

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___875(b)/1343___ , and the application is based on these facts:   Interstate Communication of a Threat and Wire Fraud-See "Attachment C"

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dylan Critten, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 16, 2023

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Christy D. Comstock, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

### ATTACHMENT C

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Dylan Critten, a Special Agent with Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with email account **mqpeisbiavavabcbiwsvh193@gmail.com (hereinafter "SUBJECT EMAIL ACCOUNT1") and forebkgshoewtvk654@gmail.com (hereinafter the "SUBJECT EMAIL ACCOUNT2") that are stored at premises owned, maintained, controlled or operated by Google, Inc. an e-mail provider headquartered at Google, Inc., 1600 Amphitheatre Parkway, Mountain View, California 94043.** The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been since December 1, 2009. In my experience in federal law enforcement, I have participated in and conducted numerous complex criminal investigations including investigations of India-based call centers engaged in various telephone and email extortion schemes. I received extensive instruction and training at the Federal Law Enforcement Training Center (FLETC) relating to general investigative techniques, electronic surveillance, rules of evidence and legal principles and statutes pertaining to criminal violations of federal law, including but not limited to, U.S. customs and immigration offenses, money laundering, currency violations, wire fraud, mail fraud, conspiracy and document and benefit fraud instruction and training at the Federal Law Enforcement Training Center (FLETC) relating to general investigative techniques, electronic surveillance, rules of evidence and legal principles and statutes pertaining to criminal violations of federal law, including but not limited to, U.S. customs and immigration offenses, money laundering, currency violations, wire fraud, mail fraud, conspiracy and document and benefit fraud.

3. By virtue of my employment as a Special Agent, the federal crimes I am assigned to investigate include, but are not limited to, violations of 18 U.S.C. § 875(b) Interstate Transmission of a Threatening Communication, 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1028 (identity theft), 18 U.S.C. § 1028A (aggravated identity theft), 18 U.S.C.§ 1341 (mail fraud), 18 U.S.C.§ 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1956 (money laundering). As a Special Agent I am personally familiar with and have

used all normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, interrogation, and undercover operations. I have performed various tasks, which include, but are not limited to: functioning as a surveillance agent; participating in the tracing of monies and assets obtained by illicit activities within the United States and abroad; interviewing witnesses, cooperating individuals and informants; functioning as a case agent; authoring and executing Federal search warrants for evidence of crimes against the United States; and participation in the arrests of numerous individuals for violations of the United States Code.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATUTORY AUTHORITY

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 875(b) Interstate Transmission of a Threatening Communication, 18 U.S.C. § 371 Conspiracy, 18 U.S.C. § 1030 Fraud in Connection with Computers, 18 U.S.C. § 1343 Wire Fraud, and 18 U.S.C. § 1956 Money Laundering have been committed by unknown conspirators. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## INVESTIGATION BACKGROUND

6.      Your affiant is familiar with similar nationwide cases that have occurred as early as 2013 in which bomb threats were called into other prominent retailer locations demanding gift cards. These schemes are often related to India-based call centers conducting tech support refund scams as well as government imposter schemes in which they seek to convince persons they are under investigation by "Agents" of the FBI, SSA, DHS, Treasury, or U.S. Drug Enforcement Administration (DEA). Often the victims are told that their arrest and/or deportation from the United States had been ordered by law enforcement and is imminent, and the only way to avoid arrest is to pay the "Government" large sums of money as instructed through gift card products and other methods.

7.      In a typical retail bomb threat for gift cards scenario, callers phone a retail store and ask to speak to the manager. Once a manager answers they immediately inform them of the urgent need to immediately load multiple $500 gift cards with funds and read the scratch off serial numbers to the caller. A manager is informed that if they do not comply, the caller will immediately walk into their store with a bomb and/or "pipe bomb" strapped to their leg and explode the bomb.

8.      Callers use extensive VoIP masking that includes anonymized and spoofed telephone calls with the caller IDs blocked to the call recipients. Many of these VoIP service numbers are originally registered from an unwitting domestic persons' computer. When callers are successful at getting gift cards these funds are routed to domestic money laundering networks whom are

already engaged in laundering victim proceeds sourced from tech support and government imposter schemes.

## PROBABLE CAUSE

9. On Monday, April 24, 2023, multiple retail grocery stores (GROCERY1 & GROCERY2) in Rogers, Arkansas in the Western District of Arkansas were evacuated by local police following bomb threats. After the store was evacuated and secured, SA Critten (HSI) and Detective Mosley of the Rogers Police Department interviewed the store manager of GROCERY2 who relayed that on Monday morning, at approximately 9:30AM, the manager was in the back office and answered the phone when it rang. The caller stated you listen to me I was just in your store, and I put a bomb in your store. Do not put me on hold, do not walk away from the store, do not call the police, and do not evacuate the building. "I will detonate this bomb." Per the manager, the caller had a deep voice that was demanding, and the manager believed the threat was real and not from children. The caller stated, "I know you heard me" and repeated the previous demands.

10. The caller then added that he wanted the manager to go to the front of the store and activate 3 separate $500 gift cards. The manager told the caller that she was unsure if they had $500 gift cards. The caller stated he was sure it could be done and demanded that the manger instruct the cashier to load the gift cards immediately. The caller demanded photos of the cards along with the proof of purchase. The manager was able to walk away from the phone in order to load 3 gift cards with $500 and ask others to call the police. The caller additionally demanded a photo of all three cards and receipts texted to him in a single photo. The call between the manager and the caller ended with the call still open and gift card numbers not given to caller as the store was being evacuated by the local police.

11. Your affiant served a series of subpoenas to determine call origination of the threatening calls with no caller-ID. According to records from AT&T and Lumen, the calls to GROCERY1 and GROCERY2 had originated from a Bandwidth VoIP number. Your affiant contacted Bandwidth and determined that the number had been resold, thus records for the telephone in question were held by Google. According to Google records received pursuant to subpoena, the Google Voice number that called GROCERY1, GROCERY2, and additional Colorado grocery stores was associated with **SUBJECT EMAIL ACCOUNT1**. According to Google records, **SUBJECT EMAIL ACCOUNT2** was listed as the recovery email account for **SUBJECT EMAIL ACCOUNT1**.

12. Your affiant likewise traced telephone calls received by Colorado grocery stores and determined that the same SUBJECT EMAIL ACCOUNT1 placed bomb threat calls to those stores as well. Your affiant also traced VoIP calls associated with a Dallas, Texas grocery store bomb threat during the same time period. These calls were traced in a similar manner back to another Google account accessed from an Internet Service Provider (ISP) in rural Tennessee. The IP was traced to a residence and the occupants, who were interviewed by HSI and local police, are not suspected of making the bomb threat. The occupants of the home in rural Tennessee appear to have had their computer compromised by a Microsoft Pop Up alert on their computer. After law enforcement review of the digital device it appeared that log files and other items were deleted from the computer and the source of the intrusion was not determined. Your affiant has extensively

investigated the ongoing Microsoft Pop Up scam which originates from India. As a part of this investigation your affiant is familiar with conspirators, logged in using remote access tools, using victim computers to set up various VoIP and cryptocurrency accounts.

13.     Based on the above information, I believe that there is probable cause to believe that **the SUBJECT EMAIL ACCOUNT1** and **SUBJECT EMAIL ACCOUNT2** were registered and used by individuals who are engaged 18 U.S.C. § 875(b) Interstate Transmission of a Threatening Communication, 18 U.S.C. § 371 Conspiracy, and 18 U.S.C. § 1343 Wire Fraud for the purpose of threatening and defrauding victims in the United States. There is also probable cause to believe that the requested information would aid in identifying the individuals involved in the criminal conduct described herein.

## BACKGROUND ON GOOGLE SERVICES

14.     In my training and experience, I have learned that Google, Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public. Google, Inc. allows subscribers to obtain e-mail accounts at the domain name gmail.com, like the e-mail account listed in Attachment A. Subscribers obtain an account by registering with Google, Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc., services, such as account access information, e-mail transaction information, and account application information. Even if this information is falsely given it can still provide indicia of ownership for the email account.

15.     In general, an e-mail that is sent to a Google, Inc. subscriber is stored in the subscriber's "mail box" on Google, Inc. servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google, Inc. servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google, Inc.'s servers for a certain period of time.

16.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Google, Inc.'s servers, and then transmitted to its end destination. Google, Inc. often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google, Inc. server, the e-mail can remain on the system indefinitely. Even if the sender deletes the e-mail, it may continue to be available on Google, Inc.'s servers for a certain period of time.

17.     A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Google, Inc. but may not include all of these categories of data.

18.     A Google, Inc. subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Google, Inc.

19.     Subscribers to Google, Inc. might not store on their home computers copies of the e-mails stored in their Google, Inc. account.  This is particularly true when they access their Google, Inc. account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

20.     In general, e-mail providers like Google, Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

21.     E-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google, Inc.'s website), and other log files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

22.     In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

23.     In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

## AUTHORITY TO ISSUE WARRANT

24.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment
CONCLUSION

25.     Based on the forgoing, I request that the Court issue the proposed search warrant.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent

jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

Respectfully submitted,

Special Agent DYLAN CRITTEN
Department of Homeland Security
Homeland Security Investigations

Affidavit subscribed and sworn to before me this __16th__ day of __May__ 2023

_____
Honorable Christy D. Comstock
United States Magistrate Judge

## ATTACHMENT A
## Place to Be Searched

This warrant applies to information associated with SUBJECT EMAIL ACCOUNT1 and SUBJECT EMAIL ACCOUNT2 which are specifically identified as:
**1: mqpeisbiavavabcbiwsvh193@gmail.com**
**2: forebkgshoewtvk654@gmail.com**
which are both stored at premises owned, maintained, controlled, or operated by Google, Inc. a company headquartered at Google, Inc., 1600 Amphitheatre Parkway, Mountain View, California 94043.

## ATTACHMENT B
## Particular Things to be Seized

**I.   Information to be disclosed by Google LLC (the "Provider")**

To the extent that the accounts described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, including any emails, records, files, logs, or information pertaining to those accounts that have been deleted but are still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.   The contents of all e-mails associated with the account, regardless of whether or not said stored electronic communications have been viewed or electronically opened by the account holder, including archived, stored, or preserved copies of e-mails (such as those preserved pursuant to a preservation request or were otherwise created as part of routine email server maintenance), sent to and from the account, draft e-mails, deleted emails the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.   All records or other information regarding the identification of the account, to include:

1.   Names (including subscriber names, usernames, and screen names);

2.   Addresses (including mailing addresses, service addresses, residential addresses, business addresses, and email addresses);

3.   Local and long-distance telephone connection records (including records of text messages sent and received), including any currently or previously assigned Google Voice telephone numbers, if applicable;

4.   Records of session times and durations;

5.   Length of service (including start date) and types of service utilized;

    6. Telephone or instrument numbers (including model type/numbers, phone numbers, IMSIs, IMEIs, MEIDs, UDIDs, MAC addresses, and advertising IDs);

    7. Other subscriber numbers or identities, including any temporarily assigned network addresses (including the registration and session Internet Protocol ("IP") addresses with associated port numbers);

    8. Means and source of payment for such service (including any credit card or bank account number).

    9. Android device ID, IMEI/MEID, Registered timestamp, first/last check-in timestamps, last check-in IP address, Android hardware information, and cell carrier/service provider;

    10. Records and information about applications, including Google Play Store purchases, downloads, and updates of Google and third-party apps.

  c. Google LLC is further required to disclose the information in Part (b) above (but not the information requested below in Part (a)) for any forwarding or fetching accounts of the Account;

    1. all other Google accounts linked to the Account because of cookie overlap (machine, browser, Flash, or otherwise); all other Google accounts registered with the same SMS phone number as the Account; all other Google accounts registered with the same recovery, alternate, or secondary email address as the Account; all other Google accounts for which the Account is the recovery, alternate, or secondary email address; all other Google accounts that share the same creation IP address, Device ID, or Android ID as the Account.

    2. Other records and information pertaining to a subscriber to or customer of the Account (not including the contents of communications), specifically:

     A. Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; usernames; source and destination IP addresses;

     B. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

    C. Records and information associated with Google Pay, including customer profile details, addresses, billing name and address, billing instruments, transactional records, device information, and linked accounts, including PayPal or Venmo accounts and full credit and debit card information;

  d. All electronic communications stored within the aforementioned electronic mail account that have been deleted but are still accessible to the host company;

  e. All account holder configurable settings specific to the aforementioned electronic mail account, including forwarding addresses, filters, linked accounts, and any electronic mail addresses stored in the account address book and any other configurable settings;

  f. All information contained within any support services attached to the specified email account(s), including but not limited to, text and photo sharing applications, instant messaging clients, and cloud computing services or storage drives;

  g. The types of service utilized;

  h. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

  i. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

**Google LLC is hereby ordered to disclose the above information to the Government within fourteen days of issuance of this warrant.**

## II. Information to be seized by the government

All information described above in Section I that relates to violations of Title 18 U.S.C. § 875(b) Interstate Transmission of a Threatening Communication, 18 U.S.C. § 371 Conspiracy, 18 U.S.C. § 1030 Fraud in Connection with Computers, 18 U.S.C. § 1343 Wire Fraud, and 18 U.S.C. § 1956 Money Laundering those violations involving persons, occurring after April 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

1. Communications, transactions, and records that relate to the Subject Offenses, including but not limited to communications between the unidentified conspirators, and other co-conspirators, and communications between the co-conspirators and victims of the tech support fraud activity or related fraud schemes;

2. Tools and/or instrumentalities used in:

   a. the production, trafficking, or possession of login credentials for protected computers; that have used or are currently being utilized to gain unauthorized access to protected computers, records of unauthorized connections to protected computers including IP addresses and dates and time of connection;

   b. the development or execution of wire fraud schemes, including but not limited to, any information recording the suspect's physical movements or travel, all bank records, checks, credit card bills, account information, and other financial records relating to physical travel or wired money transmissions, records and documents containing information, containing personally identifiable information (PII), e.g., names, Social Security Numbers, dates of birth, addresses, phone numbers, and driver's license numbers, to be used in support of any scheme or artifice to defraud through the transmission of wire communication including electronic mail (email), telephone call or text message;

   c. the development or execution of bank fraud schemes, including but not limited to, any information recording the suspect's physical movements or travel, all bank records, checks, credit card bills, account information, and other financial records relating to physical travel or wired money transmissions, records and documents containing information, containing personally identifiable information (PII), e.g., names, Social Security Numbers, dates of birth, addresses, phone numbers, and driver's license numbers, to be used in support of any application to induce someone to open a bank account with the intention of using it to facilitate fraud;

   d. for managing the fruits and proceeds of the Subject Offenses, including but not limited to electronic mail accounts for the subject and persons other

than the subject, bills of sale, BTC wallets, and records of BTC transfers, pay/owe sheets, and all bank records, checks, credit card bills, account information, and other financial records related to laundering the proceeds obtained from the Subject Offenses;

        3.      Information relating to who created, used, or communicated with the accounts, including records about their identities and whereabouts.